UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RENEE S.,[1]              :   Case No. 2:22-cv-3458
                         :
       Plaintiff,        :
                         :
                         :   Magistrate Judge Peter B. Silvain, Jr.
vs.                      :   (by full consent of the parties)
                         :
COMMISSIONER OF THE SOCIAL :
SECURITY ADMINISTRATION,  :
                         :
       Defendant.        :

DECISION AND ENTRY

Plaintiff Renee S. brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #7).

I.    **Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on August 20, 2015, alleging disability due to several impairments, including fibromyalgia, neuropathy, arthritis, anxiety, depression, sciatica, sensory sensitivity, chronic injury to right elbow, dyslexia, carpal tunnel syndrome, memory loss, lack of concentration, and standing and walking limitations.  (Doc. #7-6, *PageID* #406).  After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Timothy Gates.  ALJ Gates concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act.  (Doc. #7-3, *PageID #s* 139-53).  The Appeals Council granted Plaintiff's request for review and remanded the matter to the Commissioner for further proceedings.  *Id*. at 159-63.

On remand, the matter was assigned to ALJ Timothy G. Keller, who held a second hearing via telephone and issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  He reached the following main conclusions:

Step 1:   Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of June 25, 2014, through her date last insured of December 31, 2019.

Step 2:   Through the date last insured, she had the following severe impairments: fibromyalgia, somatic symptom disorder, depression, anxiety, and obesity.

Step 3:   Through the date last insured, she did not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

2

Step 4:      Through the date last insured, her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of a "light work … except [Plaintiff] can frequently stoop, and occasionally kneel, crouch, and crawl. She can occasionally climb ladders, ropes and scaffolds. Additionally, [Plaintiff] can perform simple, repetitive tasks with no quotas or fast-paced production requirements, involving only simple, work-related decisions, with few, if any, workplace changes.  She is able to interact with supervisors, co-workers, and public for brief durations sufficient to learn the job and trade appropriate work-related information."

Step 4:      Through the date last insured, she was capable of performing past relevant work as a cleaner.  This work did not require the performance of work-related activities precluded by her RFC.

Step 5:      Through the date last insured, in addition to past relevant work, there were other jobs that existed in significant numbers in the national economy that Plaintiff could have performed, considering her age, education, work experience, and RFC.

(Doc. #7-2, *PageID* #s 49-61).  Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability at any time from June 25, 2014, the alleged onset date, through December 31, 2019, the date last insured.  *Id.* at 61.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 46-61), Plaintiff's Statement of Errors (Doc. #8), and the Commissioner's Memorandum in Opposition (Doc. #9) and Plaintiff's Reply (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion below.

## II.    <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th

Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

III. <u>Discussion</u>

In this case, Plaintiff raises one assignment of error, which is that the ALJ "failed to properly consider Plaintiff's subjective reports of fibromyalgia and this error permeated the remainder of the decision." (Doc. #8, *PageID* #1721). In contrast, the Commissioner maintains that the ALJ considered the evidence of record as whole, including Plaintiff's testimony, the treatment record, Plaintiff's reported activity level, and the prior administrative medical findings of state agency medical and psychological consultants, and correctly determined that, while Plaintiff had limitations, they were not so significant as to preclude her from performing any work. (Doc. #9).

At the hearing before ALJ Keller, when asked what keeps her from working, Plaintiff responded, "[t]he unpredictability of my body …." (Doc. #7-2, *PageID* #87). She explained that if she stands for more than ten to fifteen minutes, she starts to shake. *Id.* Similarly, she can only walk for ten to fifteen minutes. *Id.* at 88. Although she rarely goes to the grocery store, if she does, she uses a wheelchair. *Id.* Plaintiff also has difficulty with sitting; she estimated she can only sit for twenty to thirty minutes before she needs to adjust her position. *Id.* at 89. Plaintiff testified that she cannot put her arms above her shoulders. *Id.* If she does, she has "an instant knot in [her] neck." *Id.* In fact, she and her husband have switched things around in their house so that she does not have to lift anything above her head. *Id.* Plaintiff also has trouble holding onto things with her hands. *Id.* at 89-90. She drops things all day and, if she holds something for too long, then her hand "gets like a claw and stuck in that position." *Id.* at 90. Further, she struggles to focus, especially if she is in a large room with a lot of background noise. *Id.* at 87.

Plaintiff testified that her husband has a business; he grows bamboo and makes bamboo wind chimes, mulch, and walking canes. *Id.* at 75. Plaintiff helps him by putting price stickers on items for him to sell, but she does not make anything with bamboo. *Id.* Plaintiff used to have her own business selling etched glass and burned wood. *Id.* at 76. However, she explained that she is no longer able to "wood burn" or etch glass anymore. *Id.* She estimated that she has not "wood burned anything in probably three or four years, if not five or six." *Id.*

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Soc. Sec. R. 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Notably, as the Sixth Circuit has emphasized on several occasions, fibromyalgia patients "generally 'present no objectively

5

alarming signs.'" *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861 (6th Cir. 2011) (citing *Rogers*, 486 F.3d at 243) (citations omitted). Therefore, "disability claims related to fibromyalgia are related to the *symptoms* associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself." *Id.* at 862 (citing *Rogers*, 486 F.3d at 247) (citation omitted). As a result, the assessment of subjective symptoms in fibromyalgia cases is often of critical importance. *See* Soc. Sec. R. 12-2p, 2012 WL 3104869; *see also Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 993 (N.D. Ohio 2003) (reversing where ALJ relied solely on objective tests and failed to acknowledge longitudinal clinical data including the treating physician's "finding that Swain exhibited ....18 of the 18 designated tender points.").

In assessing a claimant's subjective symptoms, the ALJ must engage in a two-step process. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." Soc. Sec. R. 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms ... and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." Soc. Sec. R. 16-3p, 2017 WL 5180304, at *9; *see also* 20 C.F.R. § 404.1529. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." Soc. Sec. R. 16-3p, 2017 WL 5180304, at *9. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms;

6

statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

When evaluating the intensity, persistence, and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Soc. Sec. R. 16-3p, 2017 WL 5180304, at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id.*

Furthermore, Social Security Ruling 16-3p requires the ALJ's decision to "explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in [the] record and how [his] evaluation of the individual's symptoms led to [his] conclusions." Soc. Sec. R. 16-3p, 2017 WL 5180304, *8. Additionally, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be *clearly articulated* so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* (emphasis added). Moreover, the Sixth

Circuit has emphasized that the articulation requirement of Social Security Ruling 16-3p[2] is especially important in cases like this one—"given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Rogers*, 486 F.3d at 248.

In the present case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Doc. #7-2, *PageID* #56). However, he concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in record for the reasons explained in this decision." *Id.* The ALJ specifically addressed Plaintiff's fibromyalgia, finding that "while [Plaintiff] does carry a diagnosis of and treatment for fibromyalgia, objective findings during the period at issue do not support [] the level of dysfunction alleged." *Id.* The ALJ noted that physical examinations were "consistently unremarkable" and neurological evaluations were "consistently within normal limits." *Id.* Further, the ALJ found that Plaintiff's treatment, other than a period of physical therapy, has been conservative and focused on medication management for pain. *Id.* He specifically addressed her testimony that she required use of a walker to perform activities of daily living, observing that she was never

---

[2] Social Security Ruling 16-3p is applicable to decisions made after March 28, 2016. In Soc. Sec. R. 16-3p, the Agency removed the word "credibility" from an earlier rule (Soc. Sec. R. 96-7p) and refocused the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." Soc. Sec. R. 16-3p, 2017 WL 5180304 at *2 (October 25, 2017). Despite the elimination of the term "credibility," "courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under Soc. Sec. R. 16-3p, with few exceptions." *Clemow v. Comm'r of Soc. Sec.*, No. 1:20-CV-592, 2021 WL 6125021, at *14 (S.D. Ohio Dec. 28, 2021) (citing *Duty v. Comm'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.")).

prescribed any assistive device. *Id.* The ALJ also addressed Plaintiff's alleged cognitive difficulties. He found that there was "very little evidence to support the level of symptoms alleged related to her 'brain fog.'" *Id.* In support, the ALJ indicated that treatment notes regarding her mental status were generally unremarkable. *Id.* Further, the ALJ found that her activities of daily living, including hobbies such as wood burning and etching glass, engaging in yard sales to supplement her income, and daily driving, suggest a higher level of functioning than she alleged. *Id.* at 57. Moreover, Plaintiff did not undergo psychiatric evaluation despite multiple recommendations. *Id.*

In his analysis of Plaintiff's symptoms, the ALJ did not discuss Plaintiff's testimony regarding her ability to put her arms above her shoulders. Specifically, as noted above, Plaintiff testified that if she does put her arms above her shoulders, she has "an instant knot in [her] neck." *Id.* at 89. Indeed, she explained that she and her husband have switched things around in their house so that she does not have to lift anything above her head. *Id*. The ALJ's failure to explain how he weighed this symptom and his reasons for discrediting it constitutes error. Soc. Sec. R. 16-3p, 2017 WL 5180304, *8; *see also Turner v. Comm'r of Soc. Sec.*, No. 1:22-CV-00877-PAG, 2023 WL 2988105, at *17 (N.D. Ohio Feb. 28, 2023), *report and recommendation adopted,* No. 1:22-CV-877, 2023 WL 5620705 (N.D. Ohio Aug. 31, 2023) ("While a reviewing court gives deference to an ALJ's credibility determination, 'the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained.'") (quoting *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted by* No. 3:18-cv-1639, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019)).

Furthermore, the ALJ's reasons for discounting Plaintiff's other statements concerning pain and other symptoms do not explain why he discounted her statements regarding overhead lifting. For instance, although the ALJ properly considered Plaintiff's daily activities, the activities listed do not require Plaintiff to lift her arms above her head. (Doc. #7-2, *PageID* #57). Additionally, the ALJ indicated that Plaintiff's daily activities include wood burning and etching glass. *Id.* However, Plaintiff testified that she does not engage in either activity anymore and has not "in probably three or four years, if not five or six." *Id.* at 76.

Similarly, although the ALJ found that Plaintiff's physical examination were consistently unremarkable, notes from both Plaintiff's physical therapist, Kim Gregg-Cornell, DPT, PT, and her chiropractor, Christian E. Gedeon, D.C., are consistent with Plaintiff's statements. In March 2017, Ms. Gregg-Cornell noted that Plaintiff demonstrated decreased strength and range of motion throughout her neck and shoulder muscles. (Doc. #7-8, *PageID* #856). Further, Ms. Gregg-Cornell opined that Plaintiff "is severely limited functionally in overhead reaching, standing and walking as well as all ADLs [activities of daily living]." *Id.* Both Ms. Gregg-Cornell's notes regarding Plaintiff's decreased strength and range of motion in her neck and shoulders and her opinion that Plaintiff's limited ability to reach overhead are consistent with Plaintiff's testimony. Although the ALJ considered Ms. Gregg-Cornell's opinion later in his decision, there is no indication that he considered her notes or opinion as they relate to Plaintiff's testimony regarding overhead lifting.[3]

---

[3] The ALJ assigned "little weight" to Ms. Gregg-Cornell's opinion. (Doc. #7-2, *PageID* #58). He found that, although Plaintiff "has regularly reported periods of symptom exacerbation during flares, … there is little support for the level of alleged functional limitation identified by Ms. Gregg-Cornell by any other treatment provider." *Id.* Additionally, the ALJ found that Ms. Gregg-Cornell "does not adequately articulate the extent to which [Plaintiff] may be limited

In addition, between October 2015 and October 2017, Dr. Gedeon's treatment records show that Plaintiff regularly reported experiencing neck pain and discomfort as well as back pain. (Doc. #7-7, *PageID* #s 810-44). Dr. Gedeon consistently noted that "[p]alpation revealed increased spinal tenderness at erector spinae" and "[r]ange of motion was decreased in lumbar flexion with pain." *Id.* Additionally, in April 2017, Dr. Gedeon indicated that Plaintiff's pain was aggravated by lifting above her head. *Id.* at 816.

In sum, the ALJ failed to give specific reasons for rejecting Plaintiff's statements concerning her inability to reach overhead. Without an explanation by the ALJ on why he rejected Plaintiff's statements, the undersigned cannot "assess how the adjudicator evaluated the individual's symptoms." Soc. Sec. R. 16-3p, 2016 WL 1119029, at *9. Accordingly, this case is remanded for a new decision that addresses all of Plaintiff's alleged symptoms, clearly states the extent to which those symptoms limit the Plaintiff, and explains why those symptoms are not credited if they are alleged to exceed the exertional requirements of the RFC.

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or

---

in the areas identified, further limiting the value of [her] opinion with respect to [Plaintiff's] residual functional capacity." *Id.*

failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking.  However, Plaintiff is entitled to have this case remanded to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above.  On remand, the ALJ is directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for period of disability and Disability Insurance Benefits should be granted.

### IT IS THEREFORE ORDERED THAT:

1.    Plaintiff's Statement of Errors (Doc. #8) is **GRANTED;**

2.    The Commissioner's non-disability finding is vacated;

12

3.    No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.    This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5.    The case is terminated on the Court's docket.


September 26, 2023                                          *s/Peter B. Silvain, Jr.*
                                                           Peter B. Silvain, Jr.
                                                           United States Magistrate Judge